**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**CEDRIC GLAZE**                                                                                        **PLAINTIFF**

**V.**                               **CASE NO. 3:15-CV-161 KGB/BD**

**MIKE ALLEN, et al.**                                                               **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge Kristine G. Baker. Any party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for your objection. Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

**II.**     **Discussion:**

A. Background

Plaintiff Cedric Glaze filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983, claiming that Defendants violated his constitutional rights while he was

held at the Crittenden County Detention Center ("Detention Center") as a pre-trial detainee.[1] (Docket entry #2)

Mr. Glaze's initial complaint included claims that arose from a number of unrelated incidents. The Court ordered him to file an amended complaint that included claims related to only one incident. (#4) Mr. Glaze filed an amended complaint, in which he elected to proceed with the claims arising from an encounter with the Detention Center officers on May 18, 2015. (#8) He alleged excessive-force, deliberate-indifference to his medical needs, failure-to-protect, due process violation, retaliation, and unconstitutional conditions of confinement. The Court allowed those claims to proceed.[2] (#10)

Defendants have now moved for summary judgment. (#72) Mr. Glaze has responded. (#82)

B.   Legal Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no real dispute about any issue important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106

---

[1] Mr. Glaze is currently housed at the Lorain Correctional Institution in Grafton, Ohio.

[2] Claims against Doe Defendants and Defendants Allen, Beard, Chatters, County Prosecutor, Brown, Ramsey, Hunt, McConnell, Ralo, Luke, Littlejohn, Dulaney, Roders, Crittenden County Sheriff Department, Wirth, Lucas and the City of West Memphis have been dismissed. (#47, #62)

S.Ct. 2505 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party must go beyond the pleadings and, by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P . 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (internal citation omitted) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.") If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case, summary judgment should be granted. See *Celotex*, 477 U.S. at 322.

To prevail on an excessive use of force claim under the due process clause of the Fourteenth Amendment, a pretrial detainee must demonstrate that the amount of force used was not reasonably necessary to restore order or maintain discipline. *Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001).

C.   Facts According to Mr. Glaze

On May 18, 2015, Mr. Glaze approached Defendants Bonner and Grooms to address grievances, to complete his prison calculation sheet, and to review some textbooks. (#2, p.12)  Either Defendant Grooms or Defendant Bonner ordered Mr. Glaze to remove his doo-rag.[3]  Mr. Glaze complied but got into a verbal argument with

---

[3] In Mr. Glaze's complaint he state Defendant Grooms ordered him to take the doo-rag off.  (#2, p.12)  In the deposition, Mr. Glaze states that it was not Defendant Grooms, it was Defendant Bonner.  (#74-13, p.9)

3

Defendant Grooms. (#2, p.12, #74-13, p. 10) Defendant Grooms grabbed Mr. Glaze by the arm and tried to take the doo-rag when Mr. Glaze broke away and went to another inmate's cell to retrieve a law book and a pen. (#2, p.12, #74-13, p. 11-13) Defendant Grooms attempted to grab Mr. Glaze as he walked away. (#2, p. 12) Mr. Glaze began to pick up papers, and Defendant Grooms shoved him to the ground. (#2, p. 12) Defendant Grooms ordered Mr. Glaze to give him all the belonging he had in his hands, then pushed Mr. Glaze against the wall. (#2, p. 12)

According to Mr. Glaze, ten or fifteen officers got involved and tried to restrain him. One officer yelled that Mr. Glaze had a pen.[4] (#2, p. 12-13) The officers slammed Mr. Glaze into a wall and took his pen, doo-rag, and papers. (#2, p. 12-13, #74, Ex. 13, p.16-20) Defendant Hines punched Mr. Glaze in the ribs and stomach and attempted to break his arm. (#2, p.13, #74-13, p. 23) Defendant Bonner allegedly told the officers repeatedly to stop putting their hands on Mr. Glaze because he would sue. (#2, p.13, #74-13, p. 17-20)

Following this incident, Mr. Glaze was handcuffed and escorted by Defendants Dexter and Thomas to the nurses station. (#2, p.13, #74-13, p. 26-27) Defendant Hines came to the nurses station and tried to attack Mr. Glaze, but other officers pushed Defendant Hines against a wall to stop him.[5] (#74-13, p. 31)

---

[4] In the deposition, Mr. Glaze testified that only Officers Ramsey and Burts and Defendant Hines got involved. (#74-13, p.16 & 18)

[5] Mr. Glaze does not mention this attack in his complaint. (#2)

Defendant Thomas got into a verbal altercation with Mr. Glaze; Mr. Glaze stood up; and Defendant Thomas grabbed him by the neck and slammed him into a chair. (#2, p.14, #74-13, p. 30-31, 38) According to Mr. Glaze, Defendants Dickerson and Childers observed the entire incident, but say they did not see anything. (#2, p.15, #74-13, p. 32-33)

While at the nurses station, the nurses checked Mr. Glaze's vital signs, took his blood pressure and examined the scrape on his neck. (#2, p.14, #74-4, #74-13, p. 39-40, 45) Mr. Glaze states that he wanted medical personnel to examine his bruised ribs and clean the scrape on his neck; however, neither his ribs nor the scrape on his neck caused him problems after the incident. (#74-13, p. 46-47)

Mr. Glaze testified that he got into a conversation with the nurses and that maybe Defendant Childers misunderstood him to say he was going to beat her or someone else, so she put him on suicide watch. (#74-13, p. 42) Mr. Glaze claims that, even after he explained to the nurse that he did not threaten to harm himself, Defendants did not take him off suicide watch. (#2, p.14)

Mr. Glaze was taken to booking while still handcuffed, and Defendant Stone pushed him into a cell and shut the door. (#2, p.15, #74-13, p. 43-44) Several minutes later, Defendant Dexter came into the cell, uncuffed Mr. Glaze, and asked for his clothes because he was on suicide watch. (#74-13, p. 44 & 52) Mr. Glaze refused to give Defendant Dexter his clothes and instead asked to speak to Defendant Coleman so that he

could remove his clothes. (#74-13, p. 44 & 58) Defendant Dexter grabbed Mr. Glaze and tried to remove his shirt. (#74-13, p. 45 & 52) Defendant Hines then ran into the cell with his head down and rammed Mr. Glaze into the cell wall and punched him in the face six or seven times. (#2, p.15, #74- 13, p. 45) Defendant Stone and Dexter also punched Mr. Glaze. (#2, p.15, #74-13, p. 46) Defendant Dexter rammed his knee into Mr. Glaze's face. (#2, p.15, #74-13, p. 47) The Defendants punched him in the face over forty times until he lost consciousness. (#2, p.15) When he regained consciousness, Defendant Stone was choking him. (#2, p.15)

Defendant Dexter was in the process of kicking Mr. Glaze in his chest and side, pulling his pants off, and dragging him across the floor when Officer Ramsey (not a named Defendant) intervened. (#2, p.15, #74-13, p. 47-48) Defendant Hines then pointed a taser at Mr. Glaze and Officer Ramsey again intervened. (#2, p.15, #74-13, p. 48-49)

Officer Ramsey brought Mr. Glaze some alcohol and swabs and a green garment to cover himself. (#2, p.16, #74-13, p. 49 & 57) Mr. Glaze wiped the scrapes and cuts with alcohol. (#74-13, p. 55)

Mr. Glaze asked to see a doctor for the following injuries: he could not raise his head; his leg was injured; he was experiencing sharp arm pain and tingling in his fingers and toes; his hip and head were injured; his vision was impaired; blood was flowing from his eardrum; and his eye was bruised. (#2, p.17-18)

Mr. Glaze was taken to the booking area so nurses could treat him. (#74-13, p. 56) The nurses bandaged his head, his shoulder, and treated his right leg. Mr. Glaze was then taken back to his cell. (#74-13, p. 56)

Officer Ramsey and Defendants Stone and Milo placed Mr. Glaze in a chair in restraints, covered the window and left him there for an hour or an hour-and-a-half. (#2, p.17, #74-13, p. 58-59) At that point, Mr. Glaze was moved to another room where Defendant Childers checked his vital signs, took his blood pressure, and checked the knots on his head while he was still restrained. (#2, #74-13, p. 60) Mr. Glaze was held there for another hour-and-a-half or two hours. (#74-13, p. 60) A West Memphis police officer came and talked to him, told him to calm down, and released him from the chair restraints. (#74-13, p. 60)

Mr. Glaze was moved to a booking cell, where he remained for six days. (#2, p.18-19) He was forced to sleep on an unsanitary concrete floor in freezing temperatures and was denied the use of a restroom. (#2, p.19)

D.   Defendants' Version

Defendants' version of the facts differs significantly from Mr. Glaze's. The Defendants contend they did not use excessive force, but rather, were trying to maintain order and discipline. According to the Defendants, on May 18, 2015, Defendant Bonner ordered Mr. Glaze to remove his doo-rag. (#74-6) Mr. Glaze eventually complied. (#74-6) Defendant Grooms noticed that Mr. Glaze had a pen and ordered him to surrender it.

7

(#74-2) Mr. Glaze refused to give up the pen and started to walk away. (#74-2) Defendant Grooms continued to instruct Mr. Glaze to hand him the pen. (#74-2) Mr. Glaze walked to the corner of the day room where a struggle ensued. (#74-2)

Defendant Grooms allegedly grabbed Mr. Glaze to keep him from going up the stairs as Mr. Glaze began to pull away. (#74-2) Defendant Hines grabbed Mr. Glaze and walked toward the door while Mr. Glaze struggled to free himself by kicking officers. (#74-2) Officer Ramsey assisted Defendant Hines in getting Mr. Glaze out of the Pod and forcibly removed the pen. (#74-2)

Mr. Glaze was taken to the nurses station where he was argumentative and disruptive. (#74-10) Nurse Dickerson put Mr. Glaze on suicide watch because he said that he would hurt himself. (#74-2, #74-10, #74-12)

Mr. Glaze was escorted to the booking area and placed in a cell. He was instructed to disrobe and put on a suicide gown. (#74-2) He refused to disrobe. (#74-2) Defendants Dexter and Stone proceeded to remove Mr. Glaze's clothes. (#74-2) Mr. Glaze was combative, so Defendant Hines came to assist. (#74-2) Mr. Glaze punched Defendant Hines in the face.[6] (#74-2) Defendant Hines then punched Mr. Glaze. (#74-2) Officer Ramsey entered the cell, talked with Mr. Glaze, and dressed him in the suicide gown. (#74-2)

---

[6]Mr. Glaze was charged with second degree battery and terroristic threatening arising out of this incident. Mr. Glaze plead guilty to second degree battery. (#74-2)

Mr. Glaze was then put in a restraint chair for a period of about two hours. (#74-9, #74-11) After he was released from the restraint chair, he was examined by the nurses. (#74-11)

E. Video Evidence

The Court has viewed a videotape of the incident giving rise to the lawsuit. (#74-4) The video shows an argument between Mr. Glaze and an officer, and Mr. Glaze walking away with paper and what might be a doo-rag. Mr. Glaze is then taken to a room by several officers and cuffed. A pen is forcibly removed from his hand. Mr. Glaze is escorted to the nurses stations by officers. Mr. Glaze is pushed into a seated position by an officer. Mr. Glaze tries to stand but and is again pushed into a seated position. Two nurses talk with Mr. Glaze and perform an examination.

Mr. Glaze is escorted to the booking area, then put into a room with a closed door. After several minutes, two officers enter the room where Mr. Glaze is held, and a scuffle ensues. An officer jumps from behind the desk and enters the room. Another officer then enters. It is not possible to discern what occurs next because the room is off-camera.

Mr. Glaze's clothes are thrown out of the room by officers, and then it appears that officers talk to Mr. Glaze from the doorway. The door is partially closed while officers are still in the room; then the door is opened.

Eventually, two officers leave the room, closing the door after them. After several minutes, an officer opens the door. Mr. Glaze appears in the doorway, and the officer

speaks with him. The officer leaves, and door is shut again. Unfortunately, the video ends before Mr. Glaze can be seen leaving the room. There are pictures of Mr. Glaze, however, taken on May 22, 2015, four days after the incident. There is no visible bruising and no cuts on his face. (#74-4)

No reasonable juror would believe that Defendants collectively punched Mr. Glaze in the face more than forty times and kneed him in the face or that they caused cuts to his face, a swollen eye and knots covering his head. The photograph taken four days after the incident shows not a single mark or bruise on Mr. Glaze's face.

Mr. Glaze's version of facts are so obviously contradicted by the video evidence that the Court must conclude that no reasonable juror would believe his allegations of excessive force. Given the video evidence in the record, the Court is not obligated to accept Mr. Glaze's version of the facts for purposes of ruling on the Defendants' motion for summary judgment. See *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (holding, in an excessive force case, that defendants were entitled to summary judgment because the plaintiff's "self-serving" allegations were "blatantly contradicted by the record" such that "no reasonable jury could believe them").

Mr. Glaze does not dispute that he refused to obey officers' orders. It is clear from the video that he was argumentative, although the video tape does not include audio. Mr. Glaze admits that he did not hand over the doo-rag or the pen when instructed to do so.

Likewise, he does not dispute that he refused to remove his clothes after he was put on suicide watch. Mr. Glaze admits that he hit Defendant Hines in the face.

Not only the Defendants' version of the facts, but also the video of the incident clearly indicate that force was used only to ensure that Mr. Glaze followed orders and did not pose a danger to others. Accordingly, the force used was reasonable under the circumstances, as a matter of law.

Mr. Glaze complains because he was put in a restraint chair. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting." *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). In other words, the restraint of a pretrial detainee's liberty is not punishment if it is "rationally related to a legitimate nonpunitive governmental purpose" and it is not "excessive in relation to that purpose." *Id.* at 561. In making this determination, a court must consider the "totality of the circumstances," including the length and conditions of the confinement. *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996). Here, Mr. Glaze was obviously noncompliant with officers' orders and attacked an officer before being placed in the restraint chair.

Under the circumstances, it was reasonable for officers to place Mr. Glaze in a restraint chair for a couple of hours. See *Norris v. Engles*, 494 F.3d 634, 639 (8th Cir. 2007) (finding no constitutional violation where a pretrial detainee, who threatened to kill herself, was handcuffed, shackled, and chained to a floor grate for approximately three

11

hours); *Hinds v. Langston*, 2008 WL 276293 (E.D. Ark. Jan. 30, 2008) (unpublished opinion) (finding no constitutional violation where a pretrial detainee was confined in a restraint chair for two hours after he verbally threatened a jailer); *Blakeney v. Rusk County Sheriff*, 2004 WL 442672 (5th Cir. March 11, 2004) (unpublished opinion) (finding no constitutional violation where a disruptive pretrial detainee was confined in a restraint chair for twenty hours, but was allowed to use the bathroom and given water). Accordingly, Mr. Glaze's excessive-force claims should be dismissed.

    F.    Deliberate-indifference

In order to show deliberate indifference, Mr. Glaze must assert facts alleging that prison officials knew of a serious medical need, yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Negligence, even gross negligence, is insufficient to establish deliberate indifference. *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

Here, the nurses did not ignore or refuse to treat Mr. Glaze. They examined him twice. The first examination, he says, was for bruised ribs and a scraped neck. Mr. Glaze admits that his bruised ribs or scraped neck did not cause any ongoing problems after the incident. Likewise, there is no question that the nurses attended to Mr. Glaze. He might

not agree with the level of care he received, but he has not shown that there was a serious medical need that was deliberately disregarded.

The second time Mr. Glaze was taken to the nurses station, medical personnel bandaged his head and shoulder and treated his right leg. In addition to these two examinations, Defendant Childers checked on Mr. Glaze while he was in restraints and checked his vital signs, including taking his blood pressure. It is undisputed that Mr. Glaze received medical care. The fact that Mr. Glaze requested to be treated at a hospital is not evidence that the nurses were deliberately indifferent to any serious medical need.

G.  Failure to Protect

To state a failure-to-protect claim, an inmate must allege that there was a substantial risk of serious harm and that a defendants knew of, but disregarded, that substantial risk of serious harm.[7] *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011); *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007); *Lenz v. Wade*, 490 F.3d 991, 995-996 (8th Cir. 2007). A prison guard can be held liable, in a § 1983 action, if he sees another guard using excessive force against a prisoner and fails to stop the attack. See *Krout v.*

---

[7]The Fourteenth Amendment applies to a failure to protect claim brought by a pretrial detainee, while the Eighth Amendment applies to a failure to protect claim brought by a convicted prisoner. However, the Eighth Circuit has held that the deliberate indifference standard applies to a failure to protect claim brought under either the Fourteenth or Eighth Amendment. *Holden v. Hirner*, 663 F.3d 336 (8th Cir. 2011); *Schoelch v. Mitchell*, 615 F.3d 1041, 1046 (8th Cir. 2010).

*Goemmer,* 583 F.3d 556, 565 (8th Cir. 2009). Here, because Defendants did not use excessive force, Mr. Glaze's derivative failure-to-protect claims cannot survive.

H. Due Process

Mr. Glaze alleges that he was placed on suicide watch as a punishment, in violation of his due process rights. A prisoner has a right to procedural due process under the Fourteenth Amendment only if he has a liberty interest at stake. See *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003). That said, being placed in administrative segregation because he is placed on suicide watch for five days does not implicate Mr. Glaze's liberty interest. *See Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Kennedy v. Blankenship,* 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (placement in punitive isolation was not atypical and significant hardship despite restrictions in mail, telephone, visitation, commissary, and property privileges). Accordingly, Mr. Glaze's due process claims should be dismissed.

I. Retaliation

In order to succeed on a retaliation claim, Mr. Glaze must establish that he engaged in constitutionally protected activity; that defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and that retaliation was the actual motivating factor for the adverse action. See *Lewis*, 486 F.3d at 1028; *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004); *Sisneros v. Nix*, 95 F.3d

749,752 (8th Cir. 1996). Here, Mr. Glaze cannot show that retaliation was the motivating factor for placement on suicide watch. He admitted in his deposition that it was possible that the nurse misunderstood him and that the nurse might have thought he said that he was going to harm someone. If the nurse thought Mr. Glaze verbalized threats of harm, even if the nurse misunderstood, retaliation was not the "actual motivating" reason that Mr. Glaze was placed on suicide watch.

    J.      Conditions of Confinement

The "Constitution does not mandate comfortable prisons" or require that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Only "extreme deprivations" that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.[8] *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Thus, in order to prevail on a conditions-of-confinement claim, a prisoner must show that, objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to create a substantial risk of serious harm to his health or safety. The prisoner must also show that, subjectively, the defendant was deliberately indifferent to the risk of harm

---

[8]Because Mr. Glaze was a pretrial detainee at the time of the alleged constitutional violation, his claims are governed by the Due Process Clause of the Fourteenth Amendment, instead of the Cruel and Unusual Punishment Clause of the Eighth Amendment, which applies to convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit has applied the same deliberate indifference standard to conditions of confinement claims based on either the Fourteenth or Eighth Amendment. *See Davis v. Oregon County, Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

posed by the deprivation. See *Davis v. Oregon County, Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

In Mr. Glaze's complaint, he alleges that he was forced to sleep on an unsanitary concrete floor in freezing temperatures and was denied the use of a restroom. (#2, p.19-20) According to Theresa Bonner, the Chief Jailer at the Detention Center, for the five days Mr. Glaze was held in cell #116, he was fed the same meals for the same number of times he would have received them if he had been in general population. He was allowed to shower every day; he could leave his cell for an hour every day to exercise, bathe, and have his cell cleaned. He had access to drinking water in his cell; he had a mat to sleep on; and cell #116 has a hole in the floor for urination and access to a toilet outside the cell for defecation. (#74-5) Defendants also produced a shower log showing that Mr. Glaze showered during the five days in question. (#74-9)

Mr. Glaze argues that he was not fed the same meals that he would have received in the general population; instead, he was given cold sandwiches three times a day. (#84, p.4) He further asserts that he was not given an opportunity to the leave the cell every 24 hours, that the cell was not cleaned, that he did not have access to drinking water in his cell, and that he was not given a mat to sleep on. (#82, p.4) Mr. Glaze does not refute Ms. Bonner's assertion that he had a hole in the floor for urination and access to a toilet outside the cell for defecation. (#82)

The Court will assume Mr. Glaze's version of the conditions for purposes of considering the motion for summary judgment. That is, he was fed cold sandwiches three times a day; his cell was cold, he was not allowed to leave the cell once a day; the cell was not cleaned; he did not have drinking water in the cell; and he did not have a mat to sleep on for five days. (#82, p. 4)

The Eighth Circuit has held that conditions far worse than those alleged by Mr. Glaze fail to rise to the level of a constitutional violation.[9] Additionally, Mr. Glaze was assigned to the cell with these conditions only for a short duration, which is a critical factor when evaluating a conditions of confinement claim. See *Smith v. Copeland*, 87 F.3d 265, 267-68, 269 (8th Cir. 1996) (stating that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis," and that "[c]onditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months." Accordingly, Defendants are entitled to judgment as a matter of law on Mr. Glaze's conditions-of-confinement claims.

---

[9] See *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)(thirty-seven days without exercise was not a constitutional violation); *Goldman v. Forbus*, 17 Fed. Appx. 487, 488 (8th Cir. 2001) (unpublished opinion) (six nights sleeping on the floor and being sprinkled with urine was not a constitutional violation); *Smith,* 87 F.3d at 269 (8th Cir. 1996) (no constitutional violation when a pretrial detainee was subjected to raw sewage for four days); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir. 1996) (four days without underwear, blankets, mattress, exercise and visits not a constitutional violation); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, running water, bedding, mail, hot food, and hygienic supplies not a constitutional violation); *White v. Nix,* 7 F.3d 120, 121 (8th Cir. 1993) (eleven days in an unsanitary cell did not amount to a constitutional violation).

K.  Qualified Immunity

Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of alleged violation, their conduct violated a clearly established federal statutory or constitutional right of which a reasonable person would have known.  *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011).  Defendants are entitled to qualified immunity unless the supported facts, viewed in the light most favorable to the plaintiff, show that they violated a constitutional right, and the constitutional right was clearly established at the time of the alleged violation.  *Id.; Livers v. Schneck*, 700 F.3d 340, 350 (8th Cir. 2012).  Importantly, those two issues may be addressed in any order.  *Id.*

Because Defendants did not violate Mr. Glaze's constitutional rights, they are entitled to qualified immunity.

## III.  Conclusion:

The Court recommends that Defendants' motion for summary judgment be GRANTED and that Mr. Glaze's lawsuit be DISMISSED, with prejudice.

DATED this 27th day of February, 2017.

_____
UNITED STATES MAGISTRATE JUDGE